## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 3:15-cr-104 |
| | : | |
| vs. | : | Judge Timothy S. Black |
| | : | |
| FESUM OGBAZION, *et al.*, | : | |
| | : | |
| Defendant. | : | |

## ORDER GRANTING IN PART AND DENYING IN PART
## DEFENDANT'S MOTION TO DISMISS

This criminal case is before the Court on Defendant Fesum Ogbazion's motion to dismiss (Doc. 45) and the parties' responsive memoranda (Docs. 49, 52).

## I. BACKGROUND

On August 25, 2015, Defendant Ogbazion, along with co-defendant Kyle Wade, were charged in a twenty-three count Indictment with: engaging in a corrupt endeavor to obstruct and impede the due administration of the Internal Revenue Code, in violation of 26 U.S.C. § 7212(a) (Count 1); conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349 (Count 2); wire fraud, in violation of 18 U.S.C. § 1343 (Counts 3-7); money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(ii) (Counts 8-13); bank fraud, in violation of 18 U.S.C. § 1344 (Count 14); tax evasion, in violation of 26 U.S.C. § 7201 (Count 15); and failure to collect and pay over payroll tax, in violation of 26 U.S.C. § 7202 (Counts 16-23).  (Doc. 6).[1]

---

[1] Both Defendants Ogbazion and Wade are charged in Counts 1 through 7 of the Indictment. (Doc. 6, ¶¶ 27-54).  The remaining counts, however, were brought against Defendant Ogbazion solely.  (*Id.* at ¶¶ 55-86).

Defendant formerly owned and operated ITS Financial, LLC ("ITS Financial"). (Doc. 6, ¶ 3).  ITS Financial was headquartered in Dayton, Ohio, and was the national franchisor of Instant Tax Service ("ITS"), a nationwide tax preparation franchise business started by Defendant in 2004 and marketed by ITS Financial throughout the United States.  (*Id.*)  ITS was purported to be the fourth largest tax preparation company in the United States.

Defendant was also the founder and sole-owner of TCA Financial, LLC ("TCA"), which served as the holding company for ITS Financial.  (Doc. 6, ¶ 4).  Defendant was also the founder and sole-owner of Tax Tree, LLC ("Tax Tree"), an entity formed in 2010 to raise capital from private investors in order to fund ITS loan products, including Instant Cash Loans ("ICL") and Refund Anticipation Loans ("RAL"), which were marketed nationwide to ITS customers.  (*Id*. at ¶¶ 5, 21).  Tax Tree also served as a clearinghouse for tax refunds issued by the Internal Revenue Service ("IRS").  (Doc. 45 at 6).  Defendant was also the sole-owner and operator of TaxMate, LLC ("TaxMate"). (Doc. 6, ¶ 6).

In November 2011, Defendant learned that the IRS's civil division was investigating ITS and its affiliated companies.  (Doc. 45 at 6).  Defendant cooperated in the investigation, appearing for several interviews and depositions, as well as providing requested documents to assist the IRS attorneys and agents.  (*Id*. at 8-14).  On March 28, 2012, Defendant Ogbazion, along with ITS Financial, TCA, and Tax Tree (collectively, the "Civil Defendants"), were named in a civil enforcement action brought by the Department of Justice ("DOJ") Tax Division, on behalf of the United States, pursuant to

2

26 U.S.C. §§ 7402 and 7408 of the Internal Revenue Code. *United States v. Fesum Ogbazion, et al.*, No. 3:12-cv-0095 (S.D. Ohio, Mar. 28, 2012).[2]

In the civil action, the Government sought to permanently enjoin the Civil Defendants "from preparing or directing or assisting in the preparation of federal tax returns, from engaging in and facilitating tax fraud, and from engaging in any other conduct that substantially interferes with the administration or enforcement of the tax laws, including the conduct described in this complaint." (Civil Doc. 1, ¶ 11). On June 17, 2013, the civil case proceeded to a ten-day bench trial before this Court. (Civil Doc. 98).

Ultimately, on November 6, 2013, a civil judgment was entered in favor of the Government (Civil Doc. 142) and an Order of Permanent Injunction was issued against the Civil Defendants (Civil Doc. 143). On November 21, 2014, the Sixth Circuit affirmed this Court's injunction on appeal, and a mandate was issued on January 13, 2015. (Civil Doc. 156). Several months later, and approximately one and a half years after the civil action was fully resolved in the district court, the Government commenced the instant criminal case against Defendant Ogbazion. (Doc. 6).

## II. STANDARD OF REVIEW

Pursuant to Fed. R. Crim. P. 12(b)(1), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." A defendant may bring a motion to dismiss under Rule 12 in order to assert, *inter alia*, defects in instituting the prosecution or a defect in the indictment. *Id*. If the Court finds

---

[2] For purposes of clarity, citations to the civil case docket will be identified as "Civil Doc.__".

that "the indictment is legally deficient, the proper result is dismissal of the indictment." *United States v. Landham*, 251 F.3d 1072, 1080 (6th Cir. 2001). Alternatively, the Court may "order[] the Government to submit a bill of particulars to supplement the allegations in the indictment …." *United States v. Jones*, 542 F.2d 661, 666 (6th Cir. 1976). The Court "may ordinarily make preliminary findings of fact necessary to decide questions of law … so long as the trial court's conclusions do not invade the province of the ultimate factfinder." *United States v. Craft*, 105 F.3d 1123, 1126 (6th Cir. 1997). However, "courts evaluating motions to dismiss do not evaluate the evidence upon which the indictment is based." *Landham*, 251 F.3d at 1080.

### III. ANALYSIS

Defendant argues that the Indictment should be dismissed, in whole or in part, or alternatively, that certain evidence should be suppressed, because: (1) the Government abused parallel civil proceedings to prosecute Defendant in this criminal case; (2) Counts 16 and 20, as well as parts of Counts 1 and 15, are barred by the applicable statutes of limitations; and (3) the Indictment fails to state an offense as to Count 1, as well as Counts 8 through 13. (Doc. 45 at 1).

#### A. Parallel Proceedings

##### *1. Dismissal of the Indictment in its Entirety*

Defendant first asserts that the Government "abused parallel proceedings in using an IRS civil investigation and a criminal investigation into an ITS franchisee to obtain information and self-incriminating testimony from [Defendant], knowing full well that [Defendant] would be targeted in a federal criminal prosecution." (Doc. 45 at 7).

4

Defendant argues that, because the Government acted in bad faith and exploited Defendant's cooperation in the civil investigations to subsequently prosecute him criminally, the Indictment should be dismissed, either in whole or in part. (*Id*.) Specifically, if the Indictment is not dismissed in its entirety, Defendant argues that Count 14, as well as Counts 15 through 23, should be dismissed due to the Government's bad faith conduct. (*Id*.) Alternatively, Defendant asserts that if the counts are not dismissed, any evidence obtained as a result of the parallel proceedings should be suppressed. (*Id.*)

As a threshold matter, "[t]here is nothing improper about the government undertaking simultaneous criminal and civil investigations …." *United States v. Stringer*, 535 F.3d 929, 933 (9th Cir. 2008).[3] Indeed, "[t]he Supreme Court has held that the government may conduct parallel civil and criminal investigations without violating the due process clause, so long as it does not act in bad faith." *Id*. at 936 (citing *United States v. Kordel*, 397 U.S. 1, 11 (1970)). Therefore, evidence obtained from civil proceedings may be used in a subsequent criminal prosecution unless Defendant demonstrates that the Government acted in bad faith, thereby rendering the use of such evidence "[a] violation of the Constitution … [or a] departure from the proper administration of criminal justice." *Kordel*, 397 U.S. at 11-13; *United States v. Scrushy*,

---

[3] *See also*, *United States v. Simcho*, 326 F. App'x 791, 792 (5th Cir. 2009) ("The simultaneous prosecution of civil and criminal actions is generally unobjectionable because the federal government is entitled to vindicate the different interests promoted by different regulatory provisions even though it attempts to vindicate several interests simultaneously in different forums") (citations omitted).

366 F. Supp. 2d 1134, 1139 (N.D. Ala. 2005); *United States v. Teyibo*, 877 F.Supp. 846, 855 (S.D.N.Y. 1995).

The Supreme Court recognized certain instances where the Government's use of evidence obtained through a civil investigation may amount to bad faith:

> [W]here the Government has brought a civil action solely to obtain evidence for its criminal prosecution or has failed to advise the defendant in its civil proceeding that it contemplates his criminal prosecution; … where the defendant is without counsel or reasonably fears prejudice from adverse pretrial publicity or other unfair injury; [… or] any other special circumstances that might suggest the unconstitutionality or even the impropriety of th[e] criminal prosecution.

*Kordel*, 397 U.S. at 11-12 (footnotes omitted).  In short, courts only find bad faith "where the government made <u>affirmative misrepresentations</u> or conducted a civil investigation <u>solely</u> for the purposes of advancing a criminal case," or where the Government has otherwise engaged in some form of fraud, trickery, or deceit.  *Stringer*, 535 F.3d at 937-41 (collecting cases) (emphasis added).

However, "[t]he mere failure of a revenue agent (be he regular or special) to warn the taxpayer that the investigation may result in criminal charges, absent any acts by the agent which materially misrepresent the nature of the inquiry, do not constitute fraud, deceit and trickery."  *United States v. Marra*, 481 F.2d 1196, 1203 (6th Cir. 1973) (quoting *United States v. Prudden*, 424 F.2d 1021, 1033 (5th Cir. 1970) (internal quotation marks omitted)).  The record must show "some affirmative misrepresentation to establish the existence of fraud, <u>and this showing must be clear and convincing</u>."  *Marra*, 481 F.2d at 1203 (emphasis in original).  "In the absence of a clear showing that the

6

taxpayer has been tricked or deceived by the government agents into providing incriminating information, the documents and statements obtained by the Internal Revenue agents are admissible." *United States v. Allen*, 522 F.2d 1229, 1233 (6th Cir. 1975).[4]

In large part, Defendant argues that the IRS, by soliciting his cooperation with an investigation classified as "civil" in nature, and by <u>not expressly confirming</u> that a criminal prosecution was probable or imminent, essentially duped him into handing over evidence that the Government now intends to use to prosecute him. (Doc. 45 at 7-27). To support the allegation of bad faith, Defendant states that he was assured by the Government that the interviews, document requests, depositions, *etc.*, were related to a "civil" investigation, and that the Government would "neither confirm nor deny" the existence or potential for criminal prosecution. (*Id.*)

The Government responds that the civil investigation was a necessary aspect of the separate civil enforcement action, which was "instituted by the Government to address and curtail actual harm and protect the public," and that "the interviews and depositions … were not a ruse," nor "were [they] somehow part of a scheme to 'trick' Defendant into incriminating himself." (Doc. 49 at 6). Indeed, the Government provides evidence that, at the time Defendant was interviewed regarding the civil matter, criminal investigations into ITS franchisees had either not yet commenced or were at such a preliminary stage

---

[4] *See, e.g., United States v. Nuth*, 605 F.2d 229, 234 (6th Cir. 1979) ("generally an affirmative misrepresentation by an IRS agent that the investigation is routine when in fact it is a criminal investigation requires suppression of evidence … [however,] suppression should not be granted unless there is a clear showing that the taxpayer was tricked or deceived") (citing *Allen*, 522 F.2d at 1233).

that disclosure of the investigations to any individual would have been unauthorized pursuant to statute. (*Id*. at 7-9, Exs. A, C, D, E). Moreover, the Government argues that, even absent an ongoing criminal investigation, Defendant was nonetheless advised of the potential criminal implications of his cooperation. (*Id*. at 8, Ex. B). For example, Defendant was interviewed as part of the civil investigation on February 23, 2012, during which Defendant had counsel present and was specifically advised prior to the interview as follows:

> DOJ COUNSEL: So this is a civil case – civil inquiry that we have going right now. But I'd like you to understand <u>if there were to be a criminal case or if one were to develop, that anything you say today can be used in connection with that matter. Do you understand</u>?

> DEFENDANT: <u>Yes</u>.

(*Id*., Ex. B at 4-5; Doc. 45, Ex. F at 4-5) (emphasis added).[5]

As an initial matter, the Court finds no constitutional violation arising from the Government's conduct. Notably, Defendant had counsel present throughout the interviews relating to the civil investigation.[6] Moreover, Defendant was advised of the potential criminal implications and expressly affirmed his understanding of the same.

---

[5] The February 23, 2012 interview was conducted by civil trial attorneys for the DOJ's tax division. (Doc. 49, Ex. B).

[6] During the December 7, 2011 and February 23, 2012 interviews with civil agents and attorneys, Defendant was accompanied by Todd E. Bryant, Esq. (Doc. 45, Exs. C, D, F; Doc. 47). At the time, Mr. Bryant was General Counsel for ITS. (Doc. 45, Ex. D). However, Mr. Bryant specifies in his declaration that he reached out to the Government on behalf of Defendant in advance of <u>both</u> interviews to inquire "whether there was any criminal element to the investigation as to [Defendant]." (*Id*.) Moreover, Defendant confirmed during the interview that he was "represented by counsel," referring to Mr. Bryant, and Mr. Bryant identified himself accordingly. (Doc. 45, Ex. F at 3-4).

8

(Doc. 45, Ex. F at 4).  And, significantly, there was no imminent criminal prosecution, nor was there an ongoing criminal investigation that should have been (or even could have been) disclosed.  Accordingly, the use of any evidence obtained through Defendant's cooperation in the civil proceedings does not give rise to a constitutional violation.  *See United States v. Rutherford*, 555 F.3d 190, 198 (6th Cir. 2009) ("The Due Process Clause is not violated here where there was no deception or trickery and where defendants' statements were clearly voluntary").

Additionally, the Court finds nothing to undermine the legitimacy of the civil action, and there is no evidence that the civil investigation was commenced with the intent to trick Defendant into incriminating himself.  Rather, the IRS instituted a valid civil action, which naturally involved an initial investigation, including depositions and document requests.  Given the nature and scope of the civil inquiry into ITS, it is understandable that the Government sought information from Defendant.  The fact that the information ultimately obtained <u>also</u>, from the Government's perspective, incriminated Defendant to the extent that it warranted its own criminal investigation and prosecution does not diminish the validity of the civil investigation.

However, the existence of a valid civil investigation does not necessarily preclude the possibility that the investigation may, at some point, be used in bad faith to collect evidence for a potential or ongoing criminal inquiry.  From this Court's perspective, the determinative issue is whether the Government, at any point, <u>utilized the civil proceedings in a manner amounting to deceit or trickery</u>, and which use was intended to elicit incriminating evidence and testimony for an ongoing or probable criminal

investigation or prosecution.  Thus, the Court looks to the totality of the circumstances

for indications of trickery or deceit constituting "such unfairness and want of

consideration for justice as independently to require [dismissal or suppression]."  *See*

*Kordel*, 397 U.S. at 11.

Here, the IRS sought information from Defendant relating to a valid civil inquiry.

Accordingly, the IRS specifically identified the inquiry as "civil in nature."  This "civil"

classification was not a lie.  And while intentionally failing to disclose certain relevant

facts (*i.e.*, lying by omission) may rise to the level of 'deceit,' the Court does not find

here that the civil attorneys and investigators omitted relevant facts that were within their

knowledge and authority to disclose, nor that any information withheld <u>reasonably</u>

deceived Defendant, such that the Government's conduct amounted to bad faith

warranting dismissal or suppression.

Significantly, Defendant admits that IRS agents told him they could "neither

confirm nor deny" whether a criminal investigation was ongoing or may potentially

commence.  (Doc. 45 at 12).  Moreover, Defendant concedes that, around December

2011, "it had been made apparent to [Defendant] and ITS's lawyers, that the IRS civil

division representatives were to some extent concerned about the culpability of individual

actors and viewed certain conduct to rise to the level of 'fraud' (suggesting potential

criminal ramifications)."  (*Id*. at 11).  Regardless, Defendant asserts that he cooperated in

the civil investigation, "[b]elieving that he was not the subject or target of any criminal

investigation (<u>and having no reason to believe otherwise</u>)."  (*Id*.) (emphasis added).

10

First, given Defendant's knowledge at the time that the IRS was looking into possible fraud related to certain ITS franchisees, and in light of the Government's refusal to 'confirm or deny' the possibility that Defendant may himself be under criminal suspicion, Defendant's assertion that he had "no reason to believe" he might be, or may become, the target of a criminal investigation strains credibility.[7] Moreover, the fact that Defendant had counsel present during each of his communications with the Government renders it all the more unlikely that he was as oblivious to his potential criminal exposure as he now claims. However, even assuming that Defendant and his attorney genuinely believed that Defendant had no cause for concern, the Court finds no basis upon which to <u>reasonably</u> conclude that <u>the Government's actions</u> contributed to this misapprehension.

In sum, the Court finds that the civil proceedings were not a ruse undertaken to obtain evidence for the criminal prosecution and, further, finds that the Government's representations and actions throughout the civil investigation did not constitute trickery or deceit. The Government's conduct throughout the course of the parallel proceedings did not amount to bad faith such that the use of evidence obtained through Defendant's voluntary cooperation would amount to a constitutional violation or a "departure from the proper administration of criminal justice." *See Kordel*, 397 U.S. at 11-13. Accordingly,

---

[7] *United States v. Warshak*, No. 1:06-cr-111, 2007 WL 4410237, at *12 (S.D. Ohio Dec. 13, 2007) ("Defendants' core theory is premised on the idea that they were led down the primrose path to cooperate with the various civil investigations to their prejudice, as if they had no idea that there could be a criminal investigation brewing. Such theory does not stand up to the evidence. <u>The evidence shows rather that momentum was building on a number of independent fronts against Warshak and his companies, and Defendants could not have avoided knowing they could be held criminally accountable</u>") (emphasis added).

neither the dismissal of the Indictment in its entirety, nor the suppression of evidence, is warranted.

### 2. Dismissal of Counts 15-23

In the alternative, Defendant argues that dismissal of Counts 15 through 23 is appropriate because the conduct alleged therein was effectively caused by the IRS's exploitation of information obtained from Defendant during the civil investigation. (Doc. 45 at 24-26). As previously stated, Count 15 charges Defendant with willfully attempting to evade and defeat the payment of payroll taxes, in violation of 26 U.S.C. § 7201, and Counts 16 through 23 charge Defendant with willful failure to pay over payroll taxes, in violation of 26 U.S.C. § 7202. (Doc. 6, ¶¶ 62-86).

As the Indictment alleges, Defendant "was responsible for collecting, accounting for, and paying over Payroll Taxes" for both ITS Financial and TaxMate. (Doc. 6, ¶¶ 83, 85). However, the Government estimates that Defendant failed to pay over roughly $1,261,821.00 in payroll taxes owed by ITS Financial and TaxMate for the second, third, and fourth quarters of 2009 and the first quarter of 2010. (*Id*. at ¶ 86; Doc. 45 at 12). In November 2011, Defendant entered into an agreed payment plan with the IRS in an effort to satisfy the outstanding debt. (*Id*. at 12-13). Specifically, the plan called for Defendant to make four installment payments, as follows: $1,000 on January 1, 2012; $10,000 on February 1, 2012; $100,000 on March 1, 2012; and $1.5 million on April 1, 2012. (Doc. 45, Ex. F at 20).

On February 23, 2012, Defendant voluntarily participated in an interview relating to the civil investigation, which interview was conducted by counsel for the DOJ's civil

12

tax division. (Doc. 45, Ex. F). During the interview, DOJ attorneys inquired as to Defendant's payment plan and, specifically, whether Defendant would be able to make the final (and most significant) payment. (*Id.* at 20). Defendant replied, "Yeah, I think so. … It's an agreement that we've entered into so I have to." (*Id.* at 20-21). Defendant did not provide any further information and the DOJ attorneys did not inquire. (*Id.*)

On March 9, 2012, the Government seized $4,311,936.62 from Tax Tree's bank account. (Doc. 45 at 13). Defendant asserts that "[t]he Tax Tree account seized by the government happened to be holding (temporarily) funds representing the tax refunds due ITS customers … [and] ITS had already cut checks to these customers drawn on these funds." (*Id.*) Therefore, Defendant states that he "was forced to – in effect – replace the funds in the seized Tax Tree account with other funds that had been earmarked for the final payroll tax payment …." (*Id.*) Thus, having used the funds set aside to pay the outstanding payroll taxes in order to cover ITS customers' refunds checks, Defendant was unable to make the final plan installment payment. (*Id.*) Accordingly, the outstanding payroll taxes remained unpaid.

Defendant now asserts that "[t]he IRS civil attorneys and agents used the civil investigation to obtain information from [Defendant] … which [information] was [then] used by the IRS criminal agents to seize the Tax Tree account, well knowing that seizure of those funds would render [Defendant] unable to pay the final installment payment due …." (Doc. 45 at 24). Defendant also alleges that the Government knew "that there was some question about [Defendant's] ability to pay [the final installment payment]." (*Id.*) Accordingly, Defendant argues that the Government "essentially created the crime" now

13

alleged in Counts 15 through 23 by seizing the funds that it knew Defendant needed to satisfy the debt. (*Id.*)

As to Count 15, the Court rejects Defendant's argument outright. Specifically, Count 15 charges Defendant with tax evasion, in violation of 26 U.S.C. § 7201, which offense has three elements: (1) willfulness; (2) existence of a tax deficiency; and (3) an affirmative act constituting evasion. *United States v. Spine*, 945 F.2d 143, 149 (6th Cir. 1991). Notably, "concealment of assets alone can constitute an offense under [Title 26] Section 7201." *United States v. Hook*, 781 F.2d 1166, 1170 (6th Cir. 1986).

Here, the Indictment alleges that, beginning about July 31, 2009 and continuing until the present, Defendant has attempted to evade the payment of payroll taxes owed by him for ITS Financial and Tax Tree by committing affirmative acts, including, *inter alia*, making false and misleading statements regarding bank accounts he controlled, interests held, and sources of income, as well as actively concealing his income, assets, and substantial available funds. (Doc. 6, ¶ 80). In short, Defendant is alleged to have committed the offense, starting as early as July 2009, by misrepresenting his financial circumstances in an effort to avoid paying the taxes owed. However, even if Defendant had subsequently paid the debt in April 2012, it would not have substantively changed the facts alleged here, *i.e.*, that Defendant initially took affirmative steps to evade payment. To hold otherwise would effectively permit citizens to freely lie to the IRS in order to avoid paying taxes and then elude prosecution simply by paying the outstanding debt once they were caught or whenever it otherwise suited them. Accordingly, Defendant's argument fails as to Count 15.

14

The Court is equally unpersuaded by Defendant's argument as to Counts 16 through 23, which charge willful failure to pay over payroll tax, in violation of 26 U.S.C. § 7202. First, Defendant's assertion that the Government acted in bad faith when it seized funds from the Tax Tree account using Defendant's proffered statements necessarily implies that: (1) the federal government had no way of determining the availability of funds in the corporate accounts absent Defendant's own admission; and (2) that the Government had not intended and/or even considered seizing the funds until Defendant mentioned his intent to follow through on his payment arrangement with the IRS. The Court finds no basis upon which to conclude that either of these implications is accurate.

Moreover, as Defendant states, once the Government seized the money in the Tax Tree account, Defendant transferred funds to that account from the money he had earmarked for the payroll tax payment. Thus, by Defendant's own admission, the Government did not seize the payroll tax funds or, at the very least, the seizure of funds was specifically limited such that Defendant was left with sufficient assets to make the final payment. This fact undermines Defendant's argument that the Government "kn[ew] that seizure of those funds would render [Defendant] unable to pay the final installment payment." (Doc. 45 at 24).

Finally, Defendant's "willful failure to pay over" the payroll tax when the tax was initially due is not negated by his subsequent lack of funds, regardless of the circumstances. "As a general rule, financial inability to pay the tax when it comes due is not a defense to criminal liability for willfully failing to pay income taxes." *United States*

*v. Ausmus*, 774 F.2d 722, 724 (6th Cir.1985). Moreover, "[w]hile a defendant's inability to pay taxes when due bears on the willfulness of his act, it is not an element of the offense under 26 U.S.C. § 7202." *United States v. Blanchard*, 618 F.3d 562, 572 (6th Cir. 2010). In short, the question of whether the Government interfered with Defendant's ability to pay his payroll taxes may have some relevance to the 'willfulness' of Defendant's conduct, but it is not a basis for dismissal of the charges.

Accordingly, as the Court does not find that the Government's seizure of the Tax Tree account amounted to bad faith, nor did the Government "create[] the crime," as Defendant asserts, dismissal of Counts 15 through 23 is not warranted.

### 3. *Dismissal of Count 14*

Defendant argues that "Count 14 (bank fraud) should be dismissed because the IRS civil attorneys obtained statements from [Defendant] regarding the conduct giving rise to the bank fraud charge (relating to events occurring in 2007) through questioning [Defendant] in his civil deposition." (Doc. 45 at 26).

Count 14 of the Indictment alleges that on or about January 10, 2007, Defendant devised a scheme and artifice to defraud HSBC Bank. Specifically, it is alleged that Defendant "instructed an ITS employee to re-print 26 HSBC bank checks, originally issued to ITS customers as Refund Anticipation Loans secured by those customers' expected federal income tax refund, and forge those customers' signatures on the back of the HSBC bank checks." (Doc. 6, ¶ 60). It is further alleged that Defendant, upon obtaining the forged checks (totaling $32,000), gave them to his Chief Financial Officer, who, at Defendant's instruction, deposited the checks into the ITS Financial operating

16

account. (*Id*. at ¶ 61). As a result, the fraudulently obtained funds were subsequently used to pay ITS Financial's outstanding obligations. (*Id*.)

Defendant states that the IRS civil attorneys and agents first learned of the conduct underlying the bank fraud count—which conduct Defendant refers to as the "duplicate check incident"—during an interview with a former ITS franchisee/employee on December 13, 2011. (Doc. 45 at 26 n.10; Doc. 47, Ex. K). However, Defendant claims that the duplicate check incident was wholly unrelated to any matter involved in the civil proceedings. (*Id*. at 26). Accordingly, Defendant argues that any questions related to the duplicate check incident could not have served any purpose other than to elicit information for criminal prosecution. (*Id*.) Thus, Defendant asserts that the Government's inquiry into the duplicate check incident during the course of the civil investigation amounted to an abuse of parallel proceedings, thereby warranting either dismissal of Count 14 in its entirety or, alternatively, suppression of "any testimony obtained by the IRS from [Defendant]." (*Id*. at 26-27).

The Court does not find evidence of bad faith in the December 13, 2011 interview which would warrant dismissal of the bank fraud charge or suppression of any related statements. As an initial matter, the statements regarding the duplicate check incident were made to DOJ and IRS representatives by a former ITS franchisee/corporate employee, not Defendant. Thus, suppression of <u>Defendant's</u> statements—which is the alternative relief sought—would serve no purpose.

Moreover, Defendant's assertion that "[t]he civil case pertained to matters not remotely related to the conduct giving rise to the alleged bank fraud" is wholly

inaccurate. The duplicate check incident was a prominently addressed issue during the civil proceedings. (*See, e.g.*, Civil Doc. 142, ¶¶ 6-56). Thus, any interview questions posed by the Government relating to the alleged bank fraud conduct would not have been outside the scope of the civil investigation, regardless of whether or not the responses received also implicated Defendant in criminal wrongdoing.

Accordingly, the Court finds that the Government did not act in bad faith throughout the course of the civil investigation, nor did it abuse the parallel proceedings such that dismissal of the Indictment, in whole or in part, is warranted.

## B. Statute of Limitations

Next, Defendant argues that Counts 16 and 20, as well as parts of Counts 1 and 15, are barred by the applicable statutes of limitations and, therefore, must be dismissed.

### 1. Counts 16 and 20

Counts 16 and 20 of the Indictment charge Defendant with failure to pay over payroll tax on behalf of ITS Financial (Count 16) and TaxMate (Count 20) for the 2nd quarter of 2009, in violation of 26 U.S.C. § 7202. (Doc. 6, ¶ 81-86).

Every employer who pays wages to an employee is responsible for withholding and deducting from said wages the employee's portion of social security and Medicare tax (collectively, "FICA tax"), as well as federal income tax. 26 U.S.C. §§ 3402(a)(1), 3102(a). "The withheld sums are commonly referred to as 'trust fund taxes,' reflecting the Code's provision that such withholdings or collections are deemed to be a 'special fund in trust for the United States.'" *Slodov v. United States*, 436 U.S. 238, 243 (1978). (quoting 26 U.S.C. § 7501(a)). Thus, the employer is liable to the IRS for the payment of

any taxes deducted and withheld from an employee's wages. 26 U.S.C. §§ 3102(b), 3403.

Additionally, an employer is required to file a Form 941, "Employer's QUARTERLY Federal Tax Return," in order to report the FICA and income tax withheld from employees' wages throughout that calendar quarter. 26 C.F.R. §§ 31.6011(a)-1, 31.6011(a)-4. A Form 941 must be filed starting from the first quarter in which the employer paid wages subject to withholdings, and continuing every quarter thereafter regardless of whether wages were paid. *Id.* The Form 941 return "shall be filed on or before the last day of the first calendar month following the period for which it is made." 26 C.F.R. §§ 31.6071(a)-1(a). In other words, the calendar quarters and corresponding Form 941 due dates are as follows:

**First Quarter** (January, February, March)—Form 941 due by April 30

**Second Quarter** (April, May, June)—Form 941 due by July 31

**Third Quarter** (July, August, September)—Form 941 due by October 31

**Fourth Quarter** (October, November, December)—Form 941 due by January 31

"The taxes reportable on the Form 941 <u>must be paid on or before the date the Form 941 is to be filed</u>." *Stevens Techs., Inc. v. C.I.R.*, 107 T.C.M. (CCH) 1067 (T.C. 2014) (citing 26 U.S.C. § 6151(a)) (emphasis added). This is accomplished by requiring employers to deposit by electronic funds transfer the withheld employment tax on either a semi-weekly or a monthly basis. 26 C.F.R. § 31.6302-1(a). The frequency of the deposits (*i.e.*, semi-weekly or monthly) is determined annually based on the aggregate amount of employment taxes the employer previously reported. 26 C.F.R. § 31.6302-

19

1(b). Ultimately, if the withholdings reported on the Form 941 exceed the funds actually deposited pursuant to the semi-weekly or monthly deposit schedule, the outstanding balance is due with the Form 941. 26 C.F.R. § 31.6302-1(h)(7).

Pursuant to 26 U.S.C. § 6151(a):

> Except as otherwise provided in this subchapter, when a return of tax is required under this title or regulations, the person required to make such return shall, without assessment or notice and demand from the Secretary, pay such tax to the internal revenue officer with whom the return is filed, and shall pay such tax at the time and place fixed for filing the return (determined without regard to any extension of time for filing the return).

(Emphasis added). In other words, the tax payment is due when the return is due. *Id*.

An employer who willfully fails to collect or truthfully account for and pay over employment taxes is subject to criminal prosecution under 26 U.S.C. § 7202. *See* 26 U.S.C. § 7501(b). Section 7202 is subject to a six-year statute of limitations, as set forth in 26 U.S.C. § 6531(4). Specifically, pursuant to 26 U.S.C. § 6531(4):

> No person shall be prosecuted, tried, or punished for any of the various offenses arising under the internal revenue laws unless the indictment is found or the information instituted within 3 years next **after the commission of the offense**, except that **the period of limitation shall be 6 years**—
> …
> (4) for the offense of willfully failing to pay any tax … at the time or times required by law or regulations[.]

(Emphasis added); *see Blanchard*, 618 F.3d at 568-69 (holding that the extended six-year statute of limitations period applies to 26 U.S.C. § 7202 violations pursuant to the exception set forth under 26 U.S.C. § 6531(4)).

20

Additionally, 26 U.S.C. § 6531 specifies that, "[f]or the purpose of determining the periods of limitation on criminal prosecutions, the rules of section 6513 shall be applicable."[8]

Specifically, 26 U.S.C. § 6513(c), entitled "Return and payment of social security taxes and income tax withholding," states that:

> (1) If a return for any period ending with or within a calendar year is filed before April 15 of the succeeding calendar year, such return shall be considered filed on April 15 of such succeeding calendar year; and
>
> (2) If a tax with respect to remuneration or other amount paid during any period ending with or within a calendar year is paid before April 15 of the succeeding calendar year, such tax shall be considered paid on April 15 of such succeeding calendar year.

26 U.S.C. § 6513(c)(1) and (2).  In other words, if a return filed or a tax payment is made for a specific tax year, and if the filing or payment occurred any time before April 15 of the year after that tax year, then the date on which the filing or payment is deemed to have occurred becomes April 15 of the following year, regardless of the date on which the return was actually filed or payment was actually made.

Here, Defendant and the Government are in agreement that, pursuant to 26 U.S.C. § 6531(4), the statute of limitations is six years for the offense of failing to pay over payroll tax under 26 U.S.C. § 7202.  (Doc. 45 at 28; Doc. 49 at 11).

---

[8] Section 6513 is titled "Time Return Deemed Filed and Tax Considered Paid," and its primary purpose is to establish a limited, but consistent, period of time during which taxpayers may claim a credit or refund as to an overpayment, or file a petition with the Tax Court.  *See* 26 U.S.C. §§ 6511, 6512.  Regardless of its primary intent, however, 26 U.S.C. § 6513 is incorporated by reference under 26 U.S.C. § 6531 and, therefore, must be addressed.

Defendant, however, argues that the clock began to run on July 31, 2009 (Doc. 45 at 28-29), which is the date identified in the Indictment at the "Quarterly Due Date" for the 2nd quarter of 2009 (Doc. 6, ¶ 86).  Thus, Defendant believes that the six-year statute of limitations expired on July 31, 2015, *i.e.*, 25 days <u>before</u> the Indictment was returned on August 25, 2015.  (*Id.*)

Conversely, the Government argues that, "[w]ith respect to a criminal prosecution arising from failure to pay over employment taxes reported on a filed Form 941, [26 U.S.C.] § 6513(c)(2) provides the statute of limitations begins to run on April 15 the year following the year for which the Form 941 was filed and the taxes were paid."  (Doc. 49 at 11).  Accordingly, the Government asserts that the statute of limitations began to run on Counts 16 and 20 on April 15, 2010 and would have expired on April 15, 2016, *i.e.*, approximately eight months <u>after</u> Defendant was indicted.  (*Id.*)

Thus, the Court must determine when the limitation period began as to the offense charged under Counts 16 and 20 of the Indictment.

Few courts have addressed the issue of when the limitation period commences for the offense of failing to pay over payroll taxes specifically, and the issue appears unsettled.  The notable decisions as to this issue include: *United States v. Hussain*, No. 13-cr-00408-JST, 2016 WL 270956 (N.D. Cal. Jan. 22, 2016); *United States v. Whatley*, No. 2:09CR531DAK, 2010 WL 1236401 (D. Utah Mar. 29, 2010); and *United States v. Creamer*, 370 F. Supp. 2d. 715 (N.D. Ill. 2005), opinion vacated in part on reconsideration, No. 04 CR 281 - 1, 2006 WL 2037326 (N.D. Ill. Apr. 4, 2006).

22

To this Court, however, 26 U.S.C. § 6513 appears to have no logical application for determining the commencement of the limitation period for a 26 U.S.C. § 7202 offense, and the few cases that have addressed the issue have not provided a consistent or compelling basis upon which this Court can rely.[9]

Therefore, the Court undertakes its own analysis to determine whether the limitation period for the offense of failing to pay over payroll taxes, in violation of 26 U.S.C. § 7202, is triggered by: (1) the Form 941/employment tax due date; (2) the fixed April 15 deadline set forth in 26 U.S.C. § 6513, which is incorporated by reference in 26 U.S.C. § 6531; or (3) another relevant occurrence.

As previously stated, in order to prosecute an individual for failing to pay over payroll taxes, the United States must return an indictment within six years "after the commission of the offense." 26 U.S.C. § 6531(4). By its plain language—specifically,

---

[9] In *Whatley*, the court found that the limitation period for failure to pay over payroll tax commenced on April 15 of the year after the relevant quarter, pursuant to 26 U.S.C. § 6513(c). 2010 WL 1236401. However the opinion in *Whatley* did not include any substantive analysis.

Similarly, in *Hussain*, the court's decision that 26 U.S.C. § 6513(c) was applicable to a § 7202 offense, lacked direct analysis. 2016 WL 270956. Moreover, the *Hussain* court openly agreed with the defendant that application of § 6513 to § 7202 offenses would likely result in an unfair outcome on many an occasion. 2016 WL 270956, at *5 n. 7. Nonetheless, the court stated that "this [unfair] result is compelled by the language of the statute [section 6513] … which section 6531 incorporates by reference…." *Id.*

As to *Creamer*, the court initially held that because the defendant had neither filed a Form 941 return, nor paid over the withheld employment taxes, 26 U.S.C. § 6513 did not apply. 370 F. Supp. 2d. at 726. The Government appealed the court's decision to the Seventh Circuit, and subsequently filed a motion for reconsideration in the district court, wherein the Government argued that the court's order was based on an erroneous recitation of the facts and that the court misconstrued the relevant law. Notably, the defendant joined in the motion for reconsideration as part of his plea agreement, and in exchange, the Government agreed to dismiss its appeal. Ultimately, the *Creamer* court granted summarily the Government's motion for reconsideration and vacated its prior order.

the term, "after the commission of the offense"—26 U.S.C. § 6531 necessarily implies

that the offense must have *already* been committed. Thus, the Court must first look to

the statutory language of the offense, as well as the specific conduct alleged in the

relevant counts.

Pursuant to 26 U.S.C. § 7202:

> Any person required under this title to collect, account for, and pay over any tax imposed by this title who **willfully** fails to collect or truthfully account for and pay over such tax shall, in addition to other penalties provided by law, be guilty of a felony and, [may be fined, imprisoned, or both].

(Emphasis added). In other words, the offense is complete once the person who was

required to collect, account for, and pay over the tax, willfully fails to do any one of those

required tasks. Relevant here is the 'failure to pay over' taxes.

As previously stated, *supra*, the payment is due when the return is due. 26 U.S.C.

§ 6151(a); *see Stevens Techs., Inc.*, 107 T.C.M. (CCH) 1067. However, the mere failure

to pay over the taxes on or before the due date is not sufficient to satisfy the elements of

the § 7202 offense. **The failure must also be willful**.

Therefore, "[t]he most reasonable and logical point at which to note that a 'failure'

has already occurred is the point at or after the due date when the lack of payment has

become willful."[10] *United States v. Quinn*, No. 09-20075-01-JWL, 2011 WL 382369, at

*1 (D. Kan. Feb. 3, 2011) (noting that if the payment due date were also the triggering

---

[10] Indeed, to hold otherwise would require the Court to read 26 U.S.C. § 7202 in such a manner as to effectively omit an essential element of the offense. *United States v. Medlock*, 792 F.3d 700, 709 (6th Cir. 2015) ("it is a 'cardinal principle of statutory construction that courts must give effect, if possible, to every clause and word of a statute'") (quoting *Williams v. Taylor*, 529 U.S. 362, 364 (2000)).

event for the statute of limitations, the result in many cases would be that the limitation period would commence prior to the crime having been completed (*e.g.*, where the initial failure to pay was an inadvertence or misunderstanding)) (emphasis added).  Notably, in *United States v. Sams*, the Sixth Circuit made this precise determination as applied to 26 U.S.C. § 7203, which section criminalizes as a misdemeanor offense the willful failure to file return, supply information, or pay tax.  865 F.2d 713, 715-16 (6th Cir. 1988).

In *Sams*, the defendant filed his 1979 income tax return on November 24, 1980 (*i.e.*, the return would have been late even with an extension) and, further, failed to pay the taxes owed on the return.  865 F.2d at 714.  On November 19, 1986, the defendant was indicted for failing to pay tax in violation of 26 U.S.C. § 7203.  *Id*.  The case proceeded to a jury trial and the defendant was ultimately convicted.  *Id*.  On appeal, the defendant argued that the statute of limitations had expired as to his count of conviction. *Id*.  Specifically, the defendant argued that 26 U.S.C. § 6513 was controlling as to the commencement of the limitation period and, accordingly, that the statute of limitations began to run when the tax was actually due, *i.e.*, April 15, 1980.  *Id*. at 714-15. Conversely, the Government in *Sams* argued that the appropriate triggering event for failing to pay his taxes was the date that defendant actually filed his tax return, *i.e.*, November 24, 1980.  *Id*.  The Sixth Circuit rejected both arguments.

More specifically, the Sixth Circuit, citing the Supreme Court's decision in *United States v. Habig*, 390 U.S. 222 (1968), held that 26 U.S.C. § 6513 ***only*** applies where either taxes are paid in advance or an early return is filed.  *Sams*, 865 F.2d at 715.

25

Moreover, the Sixth Circuit rejected the Government's contention that the return's actual filing date was the triggering event. *Id*. Instead, the Sixth Circuit held:

> [S]ince 'willfulness is an essential element' of this crime, the statute of limitations 'begins to run not when the taxes are assessed or when payment is demanded, but rather when the failure to pay the tax becomes willful ....' *United States v. Andros*, 484 F.2d 531, 532 (9th Cir.1973) (citations omitted). We hold that the limitations period for willfully failing to pay income taxes cannot be determined by any general rule. Rather, **the limitations period begins to run when the taxpayer manifests some act of willful nonpayment**.

*Sams*, 865 F.2d at 716 (emphasis added). Moreover, the Sixth Circuit stated that because "[t]he determination of when willfulness manifests itself is a factual issue," it must be decided by a jury. *Id*.

This Court finds the Sixth Circuit's analysis and holding in *Sams* entirely relevant and applicable to the instant case. Moreover, the finding that 26 U.S.C. § 6513 does not apply in the instant case is further supported by the Supreme Court's decision in *United States v. Habig*. Specifically, in *Habig*, the Supreme Court noted that, "[p]ractically, the effect of the reference to [section] 6513 in [section] 6531 is to give the Government the administrative assistance, for purposes of its criminal tax investigations, of a uniform expiration date for <u>most</u> taxpayers, despite variations in the dates of actual filing." 390 U.S. at 225-26 (emphasis added). Further, the Supreme Court, in reliance on the legislative history of 26 U.S.C. § 6513, expressly emphasized that:

> <u>There is no reason to believe that [section] 6531, by reference to the 'rules of section 6513' expands the effect and operation of the latter beyond its own terms so as to make it applicable to situations other than those involving early filing or advance payment</u>. The reference to [section] 6513 in [section] 6531

26

> extends the period within which criminal prosecution may be
> begun only when the limitations period would also be
> extended for the refunds and tax suits expressly dealt with in
> [section] 6513—**only when there has been early filing or
> advance payment**.

*Habig*, 390 U.S. at 225 (emphasis added).[11]

In short, the reference to 26 U.S.C. § 6513 is not intended to prolong running the statute of limitations in <u>every</u> case, and particularly not where 26 U.S.C. § 6513's firm deadline has no logical correlation to the elements of the offense at issue.  Thus, where the case does not involve an "<u>early</u> filing or an <u>advance</u> payment," § 6513 does not apply. Further, as the Sixth Circuit noted in *Sams*, where the offense is only completed once the element of 'willfulness' arises, determining the commencement of the statute of limitations requires a finding by a jury as to when, if ever, a defendant's failure to pay became willful.

As the Court cannot yet make the determination regarding whether Counts 16 and 20 are time barred, dismissal is not appropriate.

### 2. *Parts of Count 1*

Next, Defendant argues that parts of Count 1 are barred by the statute of limitations.  (Doc. 45 at 29-32).  Count 1 charges Defendant with engaging in a corrupt endeavor to obstruct and impede the due administration of the Internal Revenue Code, in

---

[11] In *Habig* the Supreme Court was addressing the application of 26 U.S.C. § 6513(a) to the offense of tax evasion in violation of 26 U.S.C. § 7201, rather than failure to pay over payroll tax in violation of 26 U.S.C. § 7202.  390 U.S. at 222-23.  Regardless, the rationale is equally persuasive here.  That is—the reference to 26 U.S.C. § 6513 under § 6531 is intended to be of assistance in selecting a date upon which the limitation period should commence, <u>but only when it logically applies</u>.  The mere reference to § 6513 in § 6531 does not warrant its application indiscriminately and where there is no logical connection to the circumstances presented.

violation of 26 U.S.C. § 7212(a). (Doc. 6, ¶¶ 27-30). More specifically, Defendant was charged under the 'omnibus clause' of the statute, which prohibits <u>any</u> act that corruptly obstructs or impedes, or endeavors to obstruct or impede, the due administration of Internal Revenue Code. 26 U.S.C. § 7212(a).[12]

The parties agree that the statute of limitations applicable to Count 1 is six years, pursuant to 26 U.S.C. § 6531(6). (Doc. 45 at 29; Doc. 49 at 13). However, Defendant argues that, as a result of the six-year statute of limitations, "any conduct occurring before August 25, 2009 [*i.e.*, six years prior to the Indictment] cannot form the basis of any charges against the Defendant." (Doc. 45 at 29). Defendant notes that the Indictment includes numerous allegations relating to conduct that occurred as early as January 1, 2004. (*Id*. at 29-31). Moreover, Defendant asserts that the allegations under Count 1 lack the 'singleness of thought, purpose, or action' to make it a continuing offense. (*Id*. at 30-31). Thus, Defendant moves to dismiss those allegations of conduct occurring prior to August 25, 2009. (*Id*.)

The Government counters that the broad language of the omnibus clause allows for the 'corrupt endeavor' to be alleged by way of various acts. (Doc. 49 at 13).

---

[12] The relevant section of 26 U.S.C. § 7212(a) is provided below, and the omnibus clause is identified in italics:

> (a) Corrupt or forcible interference-- Whoever corruptly or by force or threats of force (including any threatening letter or communication) endeavors to intimidate or impede any officer or employee of the United States acting in an official capacity under this title, *or in any other way corruptly or by force or threats of force (including any threatening letter or communication) obstructs or impedes, or endeavors to obstruct or impede, the due administration of this title,* shall, [be fined, imprisoned, or both].

Moreover, the Government argues that the statute of limitations does not bar prosecution under the omnibus clause, "so long as the charge includes some obstructive conduct or act occurring within six years of the return of the indictment." (*Id*.) The Court agrees.

First, the broad language of the omnibus clause allows for a charge based upon multiple, varied acts of corrupt and obstructive conduct. *See*, *e.g.*, *United States v. Murphy*, 824 F.3d 1197, 1206 (9th Cir. 2016) (holding nine discrete acts of interference alleged under one omnibus clause count to be permissible as "multiple ways of committing the same offense"); *United States v. Daugerdas*, --- F.3d ----, No. 14-2437-cr, 2016 WL 5111248, at *8 (2d. Cir. Sept. 21, 2016) (holding that one count under the omnibus clause may properly "allege[] that this crime was committed in many different ways"). Thus, the alleged corrupt acts, although distinct, are all part of one crime. Moreover, the charge is timely so long as Defendant "committed at least one act of interference less than six years before the indictment was returned." *Murphy*, 824 F.3d at 1206 (citing *United States v. Wilson*, 118 F.3d 228, 236 (4th Cir. 1997) ("The limitations period for a violation of § 7212(a) ... begins to run on the date of the last corrupt act")).

Accordingly, the allegations in Count 1 that occurred prior to August 25, 2009 are not stricken as untimely.[13]

### 3. *Parts of Count 15*

Count 15 charges Defendant with willfully attempting to evade and defeat the payment of payroll taxes, in violation of 26 U.S.C. § 7201. (Doc. 6, ¶¶ 62-81). The

---

[13] To the extent that some of the allegations address conduct allegedly <u>completed prior to August 25, 2009</u>, this Order does not necessarily bar Defendant from disputing the admissibility of those specific allegations pursuant to the Rules of Evidence by way of a liminal motion prior to trial.

statute of limitations applicable to the offense of tax evasion under 26 U.S.C. § 7201 is six years. 26 U.S.C. § 6531(2). As the Indictment here was returned on August 25, 2016, the limitation period began to run on August 25, 2009.

Defendant notes that the Indictment charges the offense as having commenced on July 31, 2009, albeit continuing into the limitation period. (Doc. 45 at 32-33). Defendant then points to three affirmative acts listed in the Indictment—specifically the acts included in paragraph 80(a), (c), and (i)—which are alleged to have occurred generally, although no date or date range is specified. (*Id*. at 33). In the absence of a specific date, Defendant argues that the acts should be construed as having occurred on July 31, 2009 and, therefore, should be stricken as falling outside of the applicable statute of limitations. (*Id*.) Alternatively, Defendant seeks a bill of particulars regarding those specific allegations. (*Id*. at 33, n.11).

As an initial matter, the Court does not believe that the absence of a date necessarily compels the finding that the undated acts occurred on July 31, 2009. The July 31, 2009 date in the Indictment appears instead to reference the earliest due date for payment of the employment taxes that Count 15 alleges Defendant attempted to evade. Thus, the undated conduct is simply a general statement regarding the acts which are more specifically alleged in the remaining sub-paragraphs.

Regardless, however, the rule as to tax evasion under 26 U.S.C. § 7201 is that the limitation period begins to run on the date of the last affirmative act of evasion. *United States v. Threadgill*, 572 F. App'x 372, 380 (6th Cir. 2014) ("Under 26 U.S.C. § 7201, the statute of limitations begins to run on the day of the last affirmative act of tax

evasion") (citing *United States v. Butler*, 297 F.3d 505, 511 (6th Cir.2002)). Indeed, the Sixth Circuit found that "to hold otherwise would only reward a defendant for successfully evading discovery of his tax fraud …." *United States v. Dandy*, 998 F.2d 1344, 1355-56 (6th Cir. 1993). Thus, even if this Court were to attribute the date of July 31, 2009 to the undated acts, this would not warrant striking those allegations, as Count 15 includes several additional acts which occurred well within the six-year statute of limitations. Accordingly, Defendant's request to dismiss Count 15 in part is denied.

As an alternative to dismissal, Defendant moves for a bill of particulars as to the undated allegations. (Doc. 45 at 33, n.11). Where an indictment lacks sufficient specificity, a Bill of Particulars is an appropriate remedy "to minimize surprise and assist defendant in obtaining the information needed to prepare a defense and to preclude a second prosecution for the same crimes." *United States v. Salisbury*, 983 F.2d 1369, 1375 (6th Cir. 1993). However, "[a] bill of particulars, unlike discovery, is not intended to provide the defendant with the fruits of the government's investigation … [r]ather, it is intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his *own* investigation." *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985) (citations omitted) (emphasis in original). Moreover, "a defendant is not entitled to discover all the overt acts that might be proven at trial." *Salisbury*, 983 F.2d at 1375 (citing *United States v. Kilrain*, 566 F.2d 979, 985 (5th Cir. 1979)). Ultimately, the decision to order a bill of particulars lies within the sound discretion of the trial court. *United States v. Phibbs*, 999 F.2d 1053, 1086 (6th Cir. 1993).

Here, the Court does not find that the allegations set forth in Count 15 are so vague or indefinite as to require a bill of particulars. This is particularly so given that the undated allegations are largely just general statements of the conduct alleged more specifically throughout the remainder of Count 15, as well as the entirety of the Indictment. Therefore, Defendant already has the "minimum amount of information necessary to permit [him] to conduct his *own* investigation." *See Smith*, 776 F.2d at 1111. Accordingly, Defendant's alternative request for bill of particulars is denied.

### C. Failure to State an Offense

Finally, Defendant alleges that the Indictment is deficient under Fed. R. Crim. P. 7(c)(1), in that it fails to set forth all elements of the offenses charged in Count 1, as well as Counts 8 through 13.

Pursuant to Fed. R. Crim. P. 7(c)(1), "[t]he indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government." An indictment is constitutionally sufficient if it: (1) "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend"; and (2) "enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974)). Apart from protecting the rights of the accused, the constitutional requirements of a valid indictment further "inform[s] the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction ...." *Russell v. United States*, 369 U.S. 749, 768 (1962).

Minor defects, such as clerical or citation errors, that neither mislead nor prejudice a defendant are not a basis upon which to dismiss an indictment. Fed. R. Crim. P. 7(c)(2), 52. However, an indictment is legally deficient where it fails to set forth facts which constitute an offense or to identify the essential elements of the offense. *Landham*, 251 F.3d at 1080. Such deficiencies cannot be remedied by amending the indictment or ordering the Government to provide a bill of particulars. *Russell*, 369 U.S. at 769-771. "If the indictment is legally deficient, the proper result is dismissal of the indictment." *Landham*, 251 F.3d at 1080.

### 1. Count 1

In Count 1 of the Indictment, Defendant is charged with engaging in a corrupt endeavor to obstruct and impede the due administration of the Internal Revenue Code, in violation of 26 U.S.C. § 7212(a). (Doc. 6, ¶¶ 27-30). Specifically, the Indictment alleges that, between approximately January 1, 2004 and November 1, 2012, "Defendants FESUM OGBAZION and KYLE WADE did corruptly endeavor to obstruct and impede the due administration of the internal revenue laws … by engaging in a scheme to obstruct and impede the IRS ("the scheme to obstruct"). (*Id.* at ¶ 28). The Indictment then lists the various obstructive acts which are at the core of "the scheme to obstruct" the IRS. (*Id.* at ¶¶ 29-30).

The alleged obstructive acts listed in the Indictment include, *inter alia*: preparing and filing client tax returns without receiving prior authorization, and based upon improper proper documentation; back-dating, forward-dating, and falsely signing e-file authorization forms; preparing and filing individual income tax returns on behalf of

33

clients, which returns falsely inflate Schedule C income; "creation of counterfeit Forms W-2, in the names of ITS customer/taxpayers, using tax preparation software, maintaining those same false Forms W-2s in customer files in the event of an IRS audit, and presenting these fraudulent Forms W-2 to IRS auditors"; and using and distributing "back-up" Electronic Filing Identification Numbers ("EFIN") to franchisees who did have their own EFIN or whose EFIN had been suspended. (Doc. 6, ¶ 29).

Defendant argues that Count 1 of the Indictment fails to set forth an essential element of a 26 U.S.C. § 7212(a) offense—that is, is the existence of a pending IRS action of which the defendant was aware. (Doc. 45 at 34). Defendant further notes that the Government could not make such an allegation in this case, as there is no evidence that Defendant was aware of any pending IRS actions prior to November 2011. (*Id*. at 34, n.12). Accordingly, Defendant moves for the dismissal of Count 1.

In response, the Government argues that the instant case is factually distinct and, therefore, the element does not need to be expressly alleged. (Doc. 49 at 15). Specifically, the Government claims that the element is required in cases that "deal[] with an individual taxpayer[,] while here the § 7212(a) charge is brought against a nationwide tax return preparation business with hundreds of locations, hundreds of employees, and by its nature, continually subject to IRS scrutiny and review."[14] (*Id*.) The Government argues that ITS was an Electronic Return Originator ("ERO") and, accordingly, "[wa]s subject to the rules and regulations promulgated in IRS Publications 1383 and 1345

---

[14] Frankly, the Court is troubled by this clearly erroneous statement. The Government brought this case against two individuals, Defendants Fesum Ogbazion and Kyle Wade. (Doc. 6). No "nationwide tax return preparation business" was named in the Indictment.

which set forth guidelines for the operation of EROs … [thereby] inform[ing] individuals, such as Defendant, that operation of an ERO subjects one to periodic review of their operations by the IRS." (*Id*. at 17). In short, the Government argues that the references in the Indictment to the continual possibility of IRS compliance audits is sufficient to give Defendant notice of the basis for the 26 U.S.C. § 7212(a) offense, including "Defendant's knowledge that [the alleged] conduct was intended to obstruct ongoing IRS action." (*Id*.)

The omnibus clause of 26 U.S.C. § 7212(a) proscribes conduct that, "in any other way corruptly … obstructs or impedes, or endeavors to obstruct or impede, the due administration of [the Internal Revenue Code]." <u>The Sixth Circuit has held that the omnibus clause "requires some pending IRS action of which the defendant was aware."</u> *United States v. Kassouf*, 144 F.3d 952, 957 (6th Cir. 1998) (emphasis added).[15] The pending IRS action "may include, but is not limited to, subpoenas, audits or criminal tax investigations." *Id*. at 957 n.2.

Here, <u>Count 1 of the Indictment does not allege, as an element of the omnibus clause offense, the existence of an IRS action of which Defendant was aware and which he corruptly undertook to impede.</u>

---

[15] Although a subsequent Sixth Circuit case, *United States v. Bowman*, 173 F.3d 595 (6th Cir. 1999), purported to limit *Kassouf*'s holding, any question as to whether *Kassouf* remains controlling precedent in this circuit was thoroughly resolved by a recent panel of the Sixth Circuit in *United States v. Miner*, 774 F.3d 336, 344-45 (6th Cir. 2014). The *Miner* court held that, "[t]o the extent that *Kassouf* and *Bowman* conflict, of course, the first-in-time (*Kassouf* ) controls," and further specified that "[t]he extension of *Bowman* … does not represent a path that was unconsidered by *Kassouf*; it represents the path that was not taken." *Id*.

Further, the Government's assertion that this element is implicit based on Defendant's knowledge that ITS was subject to IRS review at any time is without merit and contradicts the law of this circuit. Specifically, in *United States v. Miner*, the Sixth Circuit held as follows:

> The requirement is that the government prove the defendant's awareness of "some pending IRS action." *Kassouf*, 144 F.3d at 957. Such action "may include, but is not limited to, subpoenas, audits or criminal tax investigations." *Id.* at 957 n.2. This means that the government must prove that the defendant is aware that the IRS has taken some step to investigate a particular taxpayer **beyond routine administrative procedures** such as those required to accept and process tax filings in the ordinary course. *See id.* at 958. In other words, **the impeding conduct must be linked to a specific IRS inquiry into a particular taxpayer**: Once the defendant knows that the IRS's interest in a given taxpayer (including himself) has been piqued **in a manner that is out of the ordinary**, any attempt to corruptly impede the IRS's inquiries into the taxpayer after that point is potentially criminal.

774 F.3d 336, 346 (6th Cir. 2014), cert. denied, 135 S. Ct. 2060 (2015) (emphasis added).

Here, the Indictment focuses exclusively on the obstructive acts that Defendant allegedly undertook in an effort to prepare for the possibility of an IRS audit, which audits are routinely conducted upon all EROs as a matter of course. Indeed, in setting forth the alleged obstructive acts, the only specific reference in the Indictment to 'IRS auditors' is found in Paragraph 30(m) of the Indictment, which states:

> In or about 2010, and continuing to in or about 2012, Defendant OGBAZION directed an ITS franchise owner in Toledo, Ohio to print out counterfeit customer Forms W-2 using commercial tax preparation software and place those counterfeit Forms W-2 in the ITS's [sic] customers' files to

> deceive IRS Auditors into believing that they were employer
> issued, actual Forms W-2[.]

(Doc. 6, ¶ 30(m)).

However, even in the above-quoted paragraph, the reference to IRS auditors does not reflect that auditors were actually present as part of a specifically undertaken audit or investigation. This deficiency is particularly emphasized by the broad two-year time frame (*i.e.*, approximately 2010 through 2012), as well as the reference to "customers" (*i.e.*, an unspecified number of unnamed customers). (Doc. 6, ¶ 30(m)). Thus, there is no basis for this Court to find that the alleged conduct involved the deliberate obstruction of a specific "pending IRS action," versus the mere anticipation of a routine compliance audit.

The only other allegation in the Indictment that appears on its face to possibly reference a specific IRS action is found in Paragraph 30(s). Specifically, Paragraph 30(s) states: "In or about September 2010, Defendant WADE, at his Middletown, Ohio ITS Franchise, in preparation for an IRS audit of his franchise, falsely and fraudulently endorsed ITS customers' signatures on several forms to create the appearance that the customers had timely signed these forms." (Doc. 6, ¶ 30(s)).

While slightly more specific, Paragraph 30(s) still fails to capture the thrust of the essential element of 26 U.S.C. § 7212(a)—that the defendant must have known of a pending IRS action and thus engaged in obstructive conduct in order to impede that specific, pending IRS action. To be clear, the specificity as to Paragraph 30(s) is focused on the obstructive conduct, *i.e.*, around September 2010, Defendant Wade allegedly

forged customer signatures on various forms. And while the Indictment alleges that this was done "in preparation for an IRS audit of his franchise…," there is nothing indicating that the preparatory conduct alleged (*i.e.*, forging customer signatures) was done with any awareness of a specific upcoming audit.

In truth, based on the remainder of the allegations in the Indictment, which allegations focus entirely on <u>preparatory conduct in anticipation of a possible, routine compliance audit</u>, the language of Paragraph 30(s) is insufficient to allege that Defendant Wade specifically undertook the obstructive actions in an effort to impede a planned IRS audit of which he was actually aware, as opposed to his general awareness that the IRS may choose to conduct a compliance audit at any time.

In sum, <u>Defendant's general awareness that the IRS periodically conducts compliance audits of EROs does not meet the requirement that he be aware of a pending IRS action</u>. To hold otherwise would undermine the Sixth Circuit's express intent to limit the breadth of the omnibus clause so as to "impose criminal liability narrowly to ensure proper notice to the accused." *Kassouf*, 144 F.3d at 958.

As the *Kassouf* court acknowledged:

> [O]ut of the hundreds of people who file taxes every day, there is no guarantee that a particular tax return will be audited. Therefore, it would be highly speculative to find conduct such as the destruction of records, which might or might not be needed, in an audit which might or might not ever occur, is sufficient to make out an omnibus clause violation.

144 F.3d at 958. Thus, the requirement that the IRS action be "linked to a specific IRS inquiry," and that it be, "out of the ordinary," is critical to an essential element of the offense and, accordingly, must be set forth in the Indictment.

The Government cites to *Miner* in arguing that the Sixth Circuit upheld an omnibus clause conviction "[d]espite the Government's failure to request a jury instruction informing the jury that 'knowledge of a prior IRS proceeding was an element of a § 7212(a) offense,' … [because] the record was replete with evidence that Miner was aware of [IRS action]." (Doc. 49 at 16). However, this argument conflates the standards applicable to an appellate review for erroneous jury instructions, with the fundamental requirement that an indictment actually allege a complete offense. Where prosecutors properly charge a defendant by way of a valid indictment, proceed to trial, and present ample evidence at trial as to an essential element of the offense, such that no reasonable juror could have found otherwise, then omission of the element from the jury instructions, while still erroneous, is effectively harmless. *See Miner*, 774 F.3d at 345-47. The same cannot be said, however, where the indictment itself fails to allege an element of the offense. This is so because, "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury …." U.S. Const. amend. V.

> To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not

39

> found by, and perhaps not even presented to, the grand jury
> which indicted him.

*Russell*, 369 U.S. at 770.  Here, the Indictment is devoid of any indication that either the

Government or the Grand Jury was even aware that a charge under 26 U.S.C. § 7212(a)'s

omnibus clause requires the defendant to have been aware of a pending IRS action.

Finally, in arguing that the Indictment provides sufficient details to give Defendant

notice of the intended allegations, the Government fails to appreciate the importance of

ensuring the Indictment's validity in all respects.  In short, <u>the Government's 'he knows</u>

<u>what we meant' argument does not satisfy the requirement that the indictment clearly set</u>

<u>forth all elements of the offense charged</u>.  The indictment must "fully, directly, and

expressly, without any uncertainty or ambiguity, set forth all the elements necessary to

constitute the offence intended to be punished."  *Hamling*, 418 U.S. at 117.  In the instant

case, the Indictment fails to do so as to Count 1.

As the Indictment fails to set forth an element of the 26 U.S.C. § 7212(a) omnibus

clause offense, Count 1 is legally deficient and must be dismissed.

### *2. Counts 8 through 13*

Counts 8 through 13 of the Indictment charge Defendant with money laundering,

in violation of 18 U.S.C. § 1956(a)(1)(A)(ii), which statute states:

> (a)(1)  Whoever, knowing that the property involved in a financial
> transaction represents the proceeds of some form of unlawful activity,
> conducts or attempts to conduct such a financial transaction which in fact
> involves the proceeds of specified unlawful activity—
> …
> (ii) with intent to engage in conduct constituting a violation of section 7201
> and 7206 of the Internal Revenue Code of 1986
> …

shall be sentenced to a fine … or imprisonment for not more than twenty years, or both.

18 U.S.C. § 1956(a)(1)(A)(ii).

In other words, to sufficiently plead an offense of money laundering under 18 U.S.C. § 1956(a)(1)(A)(ii), the Indictment must allege that:  (1) Defendant conducted or attempted to conduct a financial transaction; (2) Defendant knew that property involved in the financial transaction represented proceeds of some form of unlawful activity; (3) the financial transaction did in fact involve proceeds of specified unlawful activity; and (4) Defendant intended to engage in conduct constituting a violation of 26 U.S.C. §§ 7201 (tax evasion) or 7206 (fraud and false statements).

Here, the predicate 'unlawful activity' alleged is wire fraud.  (Doc. 6, ¶ 57). However, Defendant argues that Counts 8 through 13 fail to allege the predicate wire fraud activity with "any kind of specificity."  (Doc. 45 at 35).  Defendant states that "[t]he specific wire fraud counts set forth in the Indictment (Counts 3-7) are clearly not the wire fraud offenses alleged as the predicate specified unlawful activity for the money laundering counts (Counts 8-13) because the dates and amounts involved … do not align."  (*Id.*)  Accordingly, Defendant moves for dismissal of the money laundering counts or, alternatively, for a bill of particulars.  (*Id.*)

Although the dates and amounts do not align, the wire fraud alleged in Counts 3 through 7 is in fact the predicate offense in the money laundering counts.  Specifically, each wire fraud count represents a separate "Deposit to ICS Account at National Bank of Commerce."  (Doc. 6, ¶ 54).  These deposits occurred on January 26, 2011, January 28,

41

2011, January 31, 2011, February 7, 2011, and February 11, 2011. (*Id*.) Thus, the funds deposited were the 'proceeds of the specified unlawful activity (*i.e.*, wire fraud).' As part of the money laundering offense, it is alleged that, within days of the initial deposit constituting the wire fraud charge, Defendant transferred <u>some</u> of the 'wire fraud proceeds' into another account—specifically, the Integrated Capital Account at Bank of America—which account Defendant allegedly used to "receive, disburse, and conceal ITS proceeds." (*Id*. at ¶¶ 56-57).

The reason the dates and amounts of the wire fraud and money laundering counts do not align is because the Government is not alleging that Defendant deposited the funds to the ICS account at National Bank of Commerce (*i.e.*, the basis for the wire fraud offenses), only to then immediately turn around on that same day and transfer out every last cent of the deposit. Instead, the wire fraud is the predicate offense and the money laundering is alleged to have occurred in incremental phases and involving only a portion of the wire fraud proceeds.

Thus, it is evident that the wire fraud alleged in Counts 3 to 7 of the Indictment is indeed the predicate unlawful activity which gave rise to the money laundering proceeds, and the Government confirms the same in its responsive memorandum (Doc. 49 at 19).

Accordingly, the money laundering counts are sufficiently alleged in the Indictment and therefore neither dismissal, nor a bill of particulars, is warranted.

## IV. CONCLUSION

Based upon the foregoing, Defendant's motion to dismiss (Doc. 45) is **GRANTED IN PART** and **DENIED IN PART**.

Specifically, the Court finds that the Indictment is legally deficient as to Count 1 (Doc. 6, ¶¶ 27-30), as the Indictment fails to set forth each of the essential elements of the charged offense, *i.e.*, engaging in a corrupt endeavor to obstruct and impede the due administration of the Internal Revenue Code (the omnibus clause), in violation of 26 U.S.C. § 7212(a).  Accordingly, Count 1 of the Indictment (Doc. 6, ¶¶ 27-30) is hereby **DISMISSED**.  Defendant's motion to dismiss (Doc. 45) is otherwise **DENIED**.

**IT IS SO ORDERED.**

Date:  10/17/2016

*s/ Timothy S. Black*
Timothy S. Black
United States District Judge